# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DINAH L. NELSON

       **Plaintiff,**                     **CIVIL ACTION NO. 06-CV-14163-DT**

       vs.                             **DISTRICT JUDGE PAUL V. GADOLA**

**COMMISSIONER OF**               **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** (Docket # 15), that Plaintiff's Motion for Summary Judgment be **DENIED** (Docket # 9), and that Plaintiff's complaint be **DISMISSED.**

### II.    PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Dinah L. Nelson filed an application for Disability Insurance Benefits ("DIB") on June 25, 2004. (Tr. 44-46). She alleged she had been disabled since July 15, 2002 due to back problems and hypertension. (Tr. 44, 53). Plaintiff's claim was denied upon initial review and reconsideration. (Tr. 23-28). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ). (Tr. 29). A hearing took place before ALJ Richard Laverdure on January 26, 2006. (Tr. 146-64). Plaintiff was represented at the hearing. (Tr. 30-31, 148). The ALJ denied Plaintiff's claims in an opinion issued on May 2, 2006. (Tr. 14-22). The Appeals Council denied review of the ALJ's decision on September 1, 2006 and the

ALJ's decision is now the final decision of the Commissioner. (Tr. 4-10). Plaintiff appealed the denial of her claim to this Court, and both parties have filed motions for summary judgment.

## III. MEDICAL HISTORY

Plaintiff began treatment with Dr. Terry Baul in 2000 for lower back pain. (Tr. 113). He treated Plaintiff on two occasions. (Tr. 112-13). Dr. Baul noted some tenderness in Plaintiff's lumbar spine. He prescribed medication and recommended the use of a heating pad. *Id.*

A CT scan of Plaintiff's lumbar spine was taken on July 26, 2002. The scan showed that Plaintiff had a mild central disc bulge at L3-L4 and an old disc protrusion at L4-L5. (Tr. 100, 129).

Dr. Baul continued treatment of Plaintiff's back pain in 2002 for which he generally prescribed medication. (Tr. 110-11). Dr. Baul also prescribed physical therapy in September 2002. (Tr. 99). The record contains progress notes from Plaintiff's physical therapy sessions which occurred in October 2002. (Tr. 90-98). Plaintiff was discharged from physical therapy on November 19, 2002 as the therapy was not providing relief. (Tr. 88-89). It was also noted that Plaintiff had been prescribed a back corset. (Tr. 88).

Plaintiff returned to Dr. Baul on several more occasions in 2003 continuing to complain of back pain. (Tr. 104-109, 137-38). During this period, Dr. Baul's treatment of Plaintiff's lower back pain consisted of prescribing medication, including Vicodin. (Tr. 104-09, 137-38). Plaintiff reported that she could not continue her job due to back pain. (Tr. 107). However, she did obtain partial pain relief with the use of her medication and back brace. (Tr. 138). Dr. Baul noted in January 2003 that Plaintiff had a limited range of cervical flexion and extension. *Id.* In May 2003 a straight leg raising test produced lower back tenderness to palpation at 70 degrees. (Tr. 108). Dr. Baul also reported that Plaintiff had spinal tenderness in August 2003 but Plaintiff's neck was supple.

An EMG study conducted in July 2003 reflected early evidence of mild right L5 radiculopathy. However, the nerve conduction studies showed no evidence of peripheral neuropathy. (Tr. 131).

The record reflects that Plaintiff saw Dr. Baul on two occasions in 2004. (Tr. 102-03). On June 28, 2004 Dr. Baul noted that Plaintiff had recently suffered a fall and had spinal tenderness. Medication was prescribed. (Tr. 102).

On September 7, 2004 Dr. Cynthia Shelby-Lane performed a consultative examination of Plaintiff. (Tr. 114–16). Dr. Shelby-Lane noted that Plaintiff had injured her back after a fall in 1993 although x-ray and MRI testing was not performed until 2000 - 2002. (Tr. 114). Plaintiff reported that she experienced daily, chronic pain with paresthesias in her right buttock and that she occasionally limped on the right side. She also stated that her pain was aggravated by weather changes, standing, stooping, squatting, lying down, getting up, walking, bending, lifting, pushing, pulling, reaching, and climbing. Plaintiff told Dr. Shelby-Lane that she had previously undergone physical therapy but had not seen a specialist and that she took Vicodin as needed for her pain. *Id.*

An examination of Plaintiff's extremities reflected that Plaintiff had no detectable swelling, spinal deformity, or muscle spasms. (Tr. 115). Pedal pulses were 2+ bilaterally and there was no muscle atrophy. Plaintiff did, however, have right paralumbar and right buttock/back discomfort. *Id.* Dr. Shelby-Lane observed that Plaintiff did not require a cane or aid for walking and Plaintiff's gait and stance were normal. Plaintiff was able to get on and off the examination table without difficulty and she could tandem walk and heel walk without difficulty. Plaintiff was unable to toe walk. She was also able to squat to 40% of the distance, recover, bend to 40% of the distance, and recover again. Plaintiff's grip strength was equal bilaterally and her gross and fine dexterity were intact. A straight leg raising test while lying down was 40 degrees on the right and 50 degrees on the left but was 90 degrees bilaterally when sitting. *Id.* Plaintiff had a full range of motion in her shoulders, elbows, knees, ankles, wrists, and

-3-

hands/fingers. She also had a normal range of extension and right and left lateral flexion in her lumbar spine but she had limited lumbar flexion. (Tr. 117-18). Plaintiff also had a full range of hip motion with the exception of forward flexion. (Tr. 118). Dr. Shelby-Lane concluded that Plaintiff had chronic back pain and hypertension. (Tr. 116).

On September 24, 2004 a state agency medical consultant reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity ("RFC") Assessment form. (Tr. 120-27). The consultant concluded that Plaintiff had the ability to: (1) lift/carry 20 pounds occasionally and 10 pounds frequently; (2) stand/walk/sit for about 6 hours in an 8-hour workday; (3) push/pull without limitation; and (4) occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 122-23).

Dr. Jack Belen performed a consultative examination of Plaintiff on January 28, 2005. An examination showed that Plaintiff had a normal stance, stature, and gait pattern. (Tr. 131-32). No focal deficits were noted in the lower extremities with the exception of 5-/5 strength in Plaintiff's right knee extensors and ankle dorsiflexors. (Tr. 131). However, Plaintiff's deep tendon reflexes were symmetric. (Tr. 132). Plaintiff's light touch sensation was decreased over the right L4-L5. A straight leg raising test produced right lower back and thigh pain at 60 degrees and resulted in left lower back pain at 80 degrees. Tenderness was also noted in the lumbosacral paraspinal musculature bilaterally. Plaintiff also had 40 degrees of forward flexion and 15 degrees of hyperextension in her lower back. *Id.*

Dr. Belen concluded that Plaintiff could not perform her previous work activities. He also stated that she was limited to a "sedentary type of job that would offer a sit stand option." Dr. Belen noted that Plaintiff was limited to pushing/pulling/lifting less than 15 pounds and should avoid twisting, bending, and prolonged standing, walking, and stair climbing. (Tr. 132).

Dr. Baul completed a form entitled "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment" in August 2005. (Tr. 139-45). Dr. Baul indicated that

Plaintiff was not capable of performing sedentary or light work on a regular, continuous basis even if that job allowed for a sit/stand at-will option. (Tr. 139-40). When asked to identify more specific limitations, Dr. Baul noted that Plaintiff could continuously sit for 6 hours in an 8-hour workday and stand/walk for 1 hour in an 8-hour workday. (Tr. 141). Nevertheless, Dr. Baul then reported that cumulatively over the course of an 8-hour workday Plaintiff was required to: (1) lie down for 2 hours; (2) sit for 2 hours; (3) stand for 2 hours; and (4) walk for 2 hours. *Id.* Dr. Baul further noted that Plaintiff could not lift any weight on a regular and continuous basis and was limited to carrying 0 to 5 pounds for no more than a total of 2 hours per 8-hour workday. (Tr. 141-42). Plaintiff was also limited to 30 minutes of reaching, handling, fingering, and feeling. (Tr. 142-43). Dr. Baul did not note any limitations related to Plaintiff's cervical spine. (Tr. 143).

## IV. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified that she and her husband handled the household chores although her husband performed the majority of them. (Tr. 149). Her husband did the heavy cleaning but she handled jobs such as dusting, which took her about 19 minutes. (Tr. 149-50). When Plaintiff went grocery shopping, she would only shop for about 20 minutes. *Id.* Plaintiff also handled the laundry, which was located in the basement. (Tr. 149).

Plaintiff testified that on a typical day she awoke between 8 and 9, washed up, and either sat in the upstairs bedroom or on the downstairs couch. After about 2 to 3 hours, Plaintiff would lie down and relax. She stated that most of the day she watched television. (Tr. 150). Plaintiff also told the ALJ that she would nap during the day if she felt sleepy but she usually would just lie down. Lying down in the fetal position helped ease the pressure in her back. *Id.* Plaintiff stated that she went to bed between 9 and 10 but it took her about 20 to 25 minutes to fall asleep. She awoke

during the night 3 to 4 times whenever she changed positions and sometimes the pain was so severe she had to take medication. (Tr. 153-54). Plaintiff estimated that she could stand for 10 minutes before her back started to hurt. Thereafter, she had to sit down and take some type of pain pill such as aspirin or, if necessary, Vicodin. The pain was in her lower back, which radiated into her buttocks and occasionally her right leg and knee. It felt like a nerve being pinched. Plaintiff stated she could sit for 25 to 30 minutes after which she had to either stand up or lay down. She usually sat with her feet elevated to alleviate her back pressure. (Tr. 151-53). Plaintiff was unsure how far she could walk but testified that she walked about one block when she went shopping. However, even with this small amount of walking, she had to lean on a shopping cart to carry her weight. (Tr. 152). Plaintiff also estimated that she could only lift 5 to 7 pounds. *Id.*

Plaintiff testified that her medication consisted of Vicodin for pain and Calumet for her blood pressure. The Vicodin sometimes made Plaintiff feel nauseated so she had to lie down and go to sleep. Plaintiff had also tried physical therapy for about 3 weeks but it was not helpful. (Tr. 155-56). She also wore a back brace and had been prescribed home exercises. (Tr. 156). According to Plaintiff, it hurt too much to do the home exercises and the back brace sometimes helped and sometimes made her back pain worse. (Tr. 157).

### B. Vocational Expert's Testimony

Jacqueline Schabacker testified as a vocational expert at the hearing. (Tr. 33, 159-64). The ALJ asked Ms. Schabacker to testify as to the type and number of jobs that were available for a hypothetical individual of Plaintiff's age, education, and work experience who had the RFC to perform light work but was limited to: (1) no climbing ladders, ropes, scaffolds, ramps, or stairs; (2) occasional crouching, crawling, kneeling, stooping, and balancing; and (3) work that allowed a sit/stand at-will option. (Tr. 159-60). Ms. Schabacker testified that such an individual could

perform unskilled, light work as an assembler (3,000 jobs locally and 3 to 4 million nationally) or as a packager (2,000 jobs locally and 3 to 4 million nationally). (Tr. 160).

Plaintiff's counsel then asked Ms. Schabacker whether these jobs would be available for a hypothetical individual who was limited to work involving no standing for no more than 2 hours per 8-hour workday. Ms. Schabacker testified that such an individual could still perform the identified assembler and packager jobs. (Tr. 161, 164). However, Ms. Schabacker testified that work would be precluded for an individual who was limited to lifting 0 to 5 pounds for 2 hours in an 8-hour workday or who was required to lay down for at least 2 hours in any given 8-hour workday. (Tr. 163).

## V. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by

substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. FRAMEWORK OF SOCIAL SECURITY DISABILITY DETERMINATIONS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C.     **ARGUMENT**

The ALJ found at step one of the sequential analysis that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.[1] (Tr. 15). The ALJ determined at step two that Plaintiff had the following "severe" impairment: degenerative disc disease of the lumbar spine with a disc bulge and some radicular pain on the right. (Tr. 15-16). However, the ALJ concluded that this impairment did not meet or equal in severity any listed impairment. (Tr. 16). The ALJ then proceeded to assess Plaintiff's RFC and found that Plaintiff had the RFC to perform light work with a sit/stand at-will option and with no climbing ladders, ropes, or scaffolds and only occasional stooping, crouching, crawling, kneeling, balancing, or using ramps/stairs. (Tr. 16-19). At steps four and five, the ALJ concluded that Plaintiff could not perform her past, relevant work but that she could, based upon the VE's testimony, perform a substantial number of assembler and packager jobs in the regional and national economy. The ALJ therefore found that Plaintiff was not disabled. (Tr. 19-21).

Plaintiff primarily challenges the ALJ's RFC finding on grounds that he improperly: (1) rejected the opinion of Plaintiff's treating physician, Dr. Baul; and (2) found Plaintiff to be less than fully credible.

1.     **Dr. Baul's Opinion**

Plaintiff contends that the ALJ failed to give controlling weight to the opinion of Dr. Baul regarding Plaintiff's physical limitations. Consequently, Plaintiff asserts that the ALJ did not fully account for her limitations in her RFC finding and subsequent hypothetical which was posed to the VE.

---

[1]     Plaintiff worked part-time as a caregiver in 2003, which was after the alleged onset date. (Tr. 54). The ALJ determined that this was not an unsuccessful work attempt because Plaintiff stopped working when her services were no longer needed and not because of her impairments. Nevertheless, the ALJ found that Plaintiff did not work enough hours or earn enough money for this work to be considered substantial gainful activity. (Tr. 15).

Thus, the VE's testimony does not provide substantial evidence to support the ALJ's non-disability determination.

As the Sixth Circuit stated in *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimant's only once." Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a treating source's opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. However, an ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is otherwise inconsistent with other substantial evidence in the record. *See Walters*, 127 F.3d at 530. Furthermore, the ALJ need not "give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ." 20 C.F.R. § 404.1527(e)(3). One such issue is "the determination or decision about whether you meet the statutory definition of disability." 20 C.F.R. § 404.1527(e)(1). If an ALJ rejects a treating physician's opinion, she must "give good reasons" for doing so in her written opinion." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d 541; Social Security Ruling ("SSR") 96-2p.

In accordance with *Wilson,* 20 C.F.R. § 404.1527(d)(2), and SSR 96- 2p, the ALJ specifically discussed Dr. Baul's opinions and stated his reasons for rejecting them. (Tr. 18). The ALJ discussed the lack of medical evidence to objectively support Dr. Baul's severe limitations related to Plaintiff's use of her upper extremities. He noted that Dr. Baul had found that Plaintiff was incapable of lifting any weight, carrying more than 5 pounds, or reaching, handling, fingering, and feeling for more than 30 minutes. (Tr. 18, 141-43). However, there were no documented complaints, treatment, or clinical findings related to Plaintiff's upper extremities in Dr. Baul's records. There was also no such documentation in Plaintiff's physical therapy notes. Moreover, the examination findings of Dr. Shelby-

Lane indicated no limitations related to Plaintiff's upper extremities and there were no diagnostic tests performed that reflected any abnormalities related to Plaintiff's upper extremities. Indeed, Dr. Shelby-Lane noted that Plaintiff's grip strength was equal bilaterally and her gross and fine motor skills were intact. Plaintiff also had a full range of motion in her shoulders, elbows, wrists, hands, and fingers. Plaintiff's counsel at the hearing even conceded that there was no such objective evidence to support any limitations related to Plaintiff's upper extremities. (Tr. 159-60). In addition to the medical evidence, the ALJ noted that Plaintiff never alleged any restrictions related to the use of her hands or upper extremities.[2]

The ALJ further discussed the lack of evidentiary support for Dr. Baul's assertion that Plaintiff was incapable of performing the exertional requirements of light or even sedentary work based upon lower back and lower extremity impairments. The ALJ commented that Dr. Baul's opinion was internally inconsistent. For example, Dr. Baul concluded that Plaintiff's 8-hour workday was required to be divided into only 2 hours of sitting, standing, walking, and lying down. However, Dr. Baul stated within the same assessment that Plaintiff was capable of sitting for 6 hours continuously in an 8-hour workday and that she could only stand/walk for 1 hour in an 8-hour workday. It was reasonable for the ALJ to question the credibility of Dr. Baul's opinion as a whole given such inconsistencies.

Furthermore, the ALJ again noted that Dr. Baul's assessment was entirely conclusory and that there was nothing within Dr. Baul's treatment notes or Plaintiff's physical therapy notes supporting such extreme limitations. The only definitive clinical finding recorded by Dr. Baul was made in May 2003 in which Dr. Baul noted that Plaintiff had a mildly positive straight leg raising test at 70 (out of 90)

---

[2] Plaintiff's claim regarding her inability to lift and reach was associated with her back impairment. (Tr. 66). However, Plaintiff testified that she could lift up to 5 (maybe 7) pounds, which was more than that contemplated by Dr. Baul. (Tr. 152). Nonetheless, the ALJ found Plaintiff less than credible as to the extent of her limitations, which is discussed in the following section.

degrees and although Dr. Baul rendered his opinion regarding Plaintiff's limitations in 2004, the record reflects that Dr. Baul treated Plaintiff only twice that year after she had experienced a fall. The lack of clinical support for Dr. Baul's opinion was justifiably relied upon by the ALJ in rejecting that opinion, especially in light of other examination findings in the record that belied Dr. Baul's opinion of Plaintiff's extreme limitations.[3] For example, Dr. Shelby-Lane noted that Plaintiff had no muscle atrophy or spasms. She also had a normal gait and stance and did not require an assistive device to walk. Plaintiff could get on and off the examination table without difficulty and could tandem and heel walk without difficulty. Plaintiff further demonstrated a negative straight leg raising test while sitting and generally exhibited a normal range of motion in her lumbar spine and hips. Dr. Belen likewise found that Plaintiff had a normal stance and gait with no focal deficits with the exception of slightly diminished strength in her right knee extensors and ankle dorsiflexors and intact reflexes.

The ALJ also examined the results of diagnostic tests related to Plaintiff's back. He noted that a CT scan taken of Plaintiff's lumbar spine in 2002 showed mild disc bulges and an EMG study from 2003 reflected early evidence of mild L5 radiculopathy but nerve conduction studies were normal with no evidence of peripheral neuropathy. (Tr. 16-17). The ALJ reasonably concluded that Plaintiff's mild condition did not support Dr. Baul's opinions regarding Plaintiff's limitations.

---

[3] The ALJ also noted that there was no objective, medical evidence to support Dr. Baul's opinion that Plaintiff's condition required her to lie down for 2 hours during each workday. There are no records indicating that Dr. Baul recommended such rest to Plaintiff as treatment and Dr. Baul offered no explanation as to how Plaintiff's mild back impairment necessitated a 2-hour rest period during an 8-hour workday. Furthermore, there is no indication in the record that Plaintiff complained to Dr. Baul of daytime drowsiness caused by medication or pain that required her to lie down for long periods of time during the day. Indeed, despite Plaintiff's testimony to the contrary, Plaintiff initially stated that lying down aggravated her back pain (although she had no problem with sitting). (Tr. 65-66). Plaintiff made a similar statement to Dr. Shelby-Lane. (Tr. 114).

The ALJ also compared Dr. Baul's opinion to the other medical opinion evidence in the record. Dr. Belen concluded that Plaintiff was limited to a "sedentary type of job that would offer a sit stand option". He also noted that she was capable of lifting/pushing/pulling 15 pounds but that she should avoid twisting, bending, prolonged standing, walking, and stair climbing. The ALJ properly noted that Dr. Belen's opinion that Plaintiff could lift 15 pounds was consistent with a exertional range of light work despite the doctor's statement that Plaintiff was limited to sedentary work.[4] *See* SSR 96-5p, 1996 WL 374183, at *5 ("Adjudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms. The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability."). The ALJ further relied upon the conclusions of the state agency medical consultant who similarly concluded that Plaintiff could perform the exertional requirements necessary for a range of light work after reviewing Dr. Shelby-Lane's report and Plaintiff's 2002 CT scan results. State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.[5] 20 C.F.R. § 404.1527(f)(2)(i).

---

[4] Sedentary work includes occasional walking and standing with the ability to lift no more than 10 pounds. 20 C.F.R. § 404.1567(a). Light work "involves lifting no more than 20 pounds at a time with frequent lifting carrying of objects weighing up to 10 pounds" and " a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). It is assumed that a claimant who can perform light work can also perform sedentary work unless there are limitations placed upon the claimant has "loss of fine dexterity or inability to sit for long periods of time. *Id.* To be capable of sedentary work, a claimant must be able to stand and walk for 2 hours and to sit for 6 hours out of an 8 hour workday. SSR 83-10. To perform light work, a claimant must be able to stand or walk, on and off, for 6 hours out of an 8 hour workday and to sit intermittently throughout the workday. *Id.*

[5] Plaintiff contends that the consultant's report was unreliable because it is not clear whether the consultant was a physician. However, Plaintiff did not object to the introduction of this evidence at the hearing. Thus, it is disingenuous for her to now lodge a speculative objection based upon the ALJ's reliance upon this evidence.

## 2. Plaintiff's Credibility

Plaintiff's also argues that the ALJ erred in assessing her subjective complaints and in finding her less than fully credible. The ALJ considered Plaintiff's complaints of disabling pain and symptomology but did not find them totally credible. Social Security regulations prescribe a two-step process for evaluating complaints of pain and other symptoms. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that he was required to consider Plaintiff's subjective

---

Plaintiff also asserts that the ALJ improperly relied exclusively upon the consultant's report to find Plaintiff not disabled. However, the record indicates that the ALJ did no such thing. Rather, the record indicates that the ALJ considered the state agency's report in addition to other record evidence, including the findings and opinions of Dr. Belen and Dr. Shelby-Lane and results of diagnostic testing. Furthermore, the ALJ only adopted those portions of the consultant's report that he found to be consistent with the other evidence of record. For example, the state agency consultant did not have the benefit of Dr. Belen's report when making his assessment. Therefore, the ALJ, consistent with Dr. Belen's recommendation, limited Plaintiff to work that would provide for a sit/stand option and would require no climbing of ropes, ladders, or scaffolds. The ALJ additionally limited Plaintiff to no climbing of stairs or ramps in the hypothetical he posed to the VE.

complaints in determining Plaintiff's RFC. (Tr. 16). Specifically, the ALJ focused on Plaintiff's testimony that she could only sit for 25-30 minutes before she was required to get up and move around, walk for one block, and lift up to 5 pounds. (Tr. 19). The ALJ found that Plaintiff had impairments that could cause some pain, limitations, and restrictions in terms of sitting, walking, and standing and he therefore found that Plaintiff was partially credible. (Tr. 19). To the extent the ALJ found Plaintiff's complaints credible, he accounted for them in his RFC finding. For example, the ALJ included a sit/stand at-will option and imposed postural limitations.

However, the ALJ determined that the severity of Plaintiff's alleged pain and other symptoms was not totally credible and provided reasons for this conclusion. Reading the ALJ's opinion as a whole, it is clear that the ALJ found little objective, medical evidence to support Plaintiff's alleged limitations regarding her disabling pain and her ability to sit, walk, and lift. As noted above, the ALJ considered: (1) the mild nature of Plaintiff's back impairment with no evidence of peripheral neuropathy as reflected by the CT scan and EMG; (2) the lack of any complaints or treatment regarding Plaintiff's upper extremities; (3) the clinical findings that showed no muscle atrophy or neurological deficits, which are typical indicators of severe pain. *See Jones*, 945 F.2d at 1369-70. The ALJ also considered the opinions of Dr. Belen and the state agency consultant who found Plaintiff capable of performing a range of light work.

Furthermore, the ALJ noted that Plaintiff did not receive any ongoing treatment for her back impairment. In his opinion, the ALJ acknowledged that Plaintiff was treated by Dr. Baul who had prescribed medication, physical therapy, and a back brace. Nevertheless, the ALJ reasonably concluded that the treatment undergone by Plaintiff was not indicative of severe, disabling pain or other limitations. *See* 20 C.F.R. § 404.1529(c)(3)(v); SSR 96-7p, 1996 WL 374186 * 7 (". . . the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of

complaints.").[6] In discussing Plaintiff's medical history, the ALJ noted that Plaintiff's back injury occurred in 1993 but she did not begin treatment with Dr. Baul until 2000 when she saw him on two occasions. No tests were performed and no treatment was received again until 2002. Thereafter, Plaintiff underwent six sessions of physical therapy, which was not effective, and she was prescribed a back brace. Plaintiff saw Dr. Baul in 2003 on essentially a monthly basis but he continued to only prescribe medication.[7] Plaintiff was treated by Dr. Baul on two occasions in late 2004. There is no evidence that Plaintiff was referred to a specialist for treatment.[8] (Tr. 16-17).

The issue is whether these credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio Feb. 11, 1999). Under this

---

[6] Plaintiff asserts that the ALJ improperly relied upon the lack of treatment because he did not consider Plaintiff's explanations for her failure to pursue such treatment. *See* SSR 96-7p ("The adjudicator must not draw any inferences about an individual's . . . failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain" such a failure.) However, Plaintiff never offered an explanation to the ALJ or to this Court to explain her lack of regular treatment nor does she point to any evidence in the record that the ALJ overlooked. Consequently, no error occurred.

[7] Despite her impairments, Plaintiff also worked for 10 months as a part-time caregiver during 2003.

[8] The ALJ additionally acknowledged, in accordance with 20 C.F.R. § 404.1529(c)(3), that Plaintiff reported an extremely limited ability to perform daily activities. (Tr. 19). The ALJ nevertheless concluded that the lack of objective, medical evidence to support Plaintiff's stated limitations weighed more heavily against Plaintiff's credibility.

standard, the Court concludes that the ALJ's credibility determinations are supported by substantial evidence.

Based upon the foregoing, the Court concludes that substantial evidence supports the ALJ's RFC and credibility determinations. Although Plaintiff points to evidence in the record that could support contrary determinations, it is the role of the ALJ, not the court, to weigh the evidence and resolve any conflicts therein. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)("Our role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony. Instead, we focus on whether substantial evidence supports the Commissioner's decision...").

## VI. <u>RECOMMENDATION</u>

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment (Docket # 9) should be **DENIED**. Defendant's Motion for Summary Judgment (Docket # 15) should be **GRANTED** and the Plaintiff's complaint **DISMISSED**. Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 07, 2007                              s/ Mona K. Majzoub
                                                        **MONA K. MAJZOUB**
                                                        **UNITED STATES MAGISTRATE JUDGE**

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 07, 2007                              s/ Lisa C. Bartlett
                                                        **Courtroom Deputy**